UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| LAURO VALDES, CESAR LOPEZ, and JAVIER HERNANDEZ,<br><br>*Plaintiffs*,<br><br>v.<br><br>NORTH EAST SITE WORKS, INC., SAM BORRELLI, JR. and VIRGIL BORRELLI<br><br>*Defendants*. | Case No.<br><br><br><br><br><u>**COMPLAINT**</u><br><br>**JURY TRIAL REQUESTED** |

Plaintiffs Lauro Valdes, Cesar Lopez, and Javier Hernandez by their undersigned attorneys the Law Office of Robert D. McCreanor, P.L.L.C. and Worker Justice Center of New York, state and allege as follows:

**PRELIMINARY STATEMENT**

1. Plaintiffs Lauro Valdes, Cesar Lopez, and Javier Hernandez (collectively, "Plaintiffs") worked for Defendants North East Site Works, Inc., Sam Borrelli, Jr. and Virgil Borrelli (collectively, "Defendants") performing strenuous plumbing and construction work. Plaintiffs regularly worked long hours, but they were not paid for all their hours worked and were not paid the overtime rate for hours worked above forty each week. For some weeks during their employment, Plaintiffs were not paid at all.

2. Moreover, Plaintiffs Valdes and Hernandez, manual workers, were often not paid weekly as required by New York Labor Law § 191(1)(a). Instead, Plaintiffs Valdes and Hernandez were regularly paid late throughout their employment, thus depriving them of their right to timely-paid wages.

3. Further, Plaintiffs were not provided with a notice of pay rate at hiring nor were Plaintiffs provided with accurate wage payment statements as required by New York Labor Law §§ 195(1) and (3).

4. To remedy these legal violations, Plaintiffs bring this action under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq.*, and the New York Labor Law ("NYLL"). Plaintiffs seek, *inter alia*, their unpaid wages, liquidated damages, and damages for other violations of the NYLL.

## JURISDICTION AND VENUE

5. The Court has subject matter jurisdiction over Plaintiffs' federal claims pursuant to 28 U.S.C. § 1331 (federal question jurisdiction) and 29 U.S.C. § 201 *et seq.* (FLSA).

6. The Court has supplemental jurisdiction over Plaintiffs' pendant state law claims under 28 U.S.C. § 1367. Plaintiffs' state law claims are part of the same case or controversy as Plaintiffs' federal claim.

7. Venue is proper in this district pursuant to 28 U.S.C. § 1391 because a substantial part of the acts and/or omissions giving rise to the claims alleged in this Complaint occurred within this district.

8. Defendants reside and/or do business in this district.

## PARTIES

### Plaintiffs

9. Plaintiff Lauro Valdes is an adult individual who has resided and currently resides in New York State.

10. Plaintiff Cesar Lopez is an adult individual who has resided and currently resides in New York State.

11. Plaintiff Javier Hernandez is an adult individual who has resided and currently resides in New York State.

12. Plaintiff Valdes was employed by Defendants from approximately summer 2017 through October 2021 and again from May 2, 2022 through July 5, 2022.

13. Plaintiff Lopez was employed by Defendants from approximately April 2021 through February 18, 2022.

14. Plaintiff Hernandez was employed by Defendants from approximately February 28, 2022 through May 26, 2022.

15. At all times relevant to this action, Plaintiffs were non-exempt "employees" of Defendants as defined by the FLSA and NYLL.

16. At all times relevant to this action, Plaintiffs were "manual workers" within the meaning of NYLL §§ 190(4) and 191(1)(a), and New York State Department of Labor regulations.

17. Plaintiffs' primary and native language is Spanish.

**Defendants**

North East Site Works, Inc.

18. Defendant North East Site Works, Inc. is a domestic business corporation doing business in the State of New York with its place of business located at 1270 Saw Mill River Road, Yonkers, NY 10710.

19. At all times relevant to this action, North East Site Works, Inc. was an "employer" of Plaintiffs as defined by the FLSA and NYLL.

20. At all times relevant to this action, North East Site Works, Inc. "employed" Plaintiffs within the meaning of the FLSA and NYLL.

21. At all times relevant to this action, North East Site Works, Inc. has been an enterprise engaged in interstate commerce within the meaning of the FLSA, 29 U.S.C. § 203(r)–(s).

22. At all times relevant to this action, North East Site Works, Inc. had employees engaged in commerce or in the production of goods for commerce, or who handled, sold or otherwise worked on goods or materials that were moved in or produced for commerce by any person.

23. Upon information and belief, North East Site Works, Inc. had gross sales made or business done in excess of $500,000 annually for each of the last five (5) years.

Sam Borrelli, Jr.

24. Defendant Sam Borrelli, Jr. is an owner of North East Site Works, Inc.

25. At all times relevant to this action, Sam Borrelli, Jr. hired and fired employees, determined the work schedules of employees and determined the amount of wages that employees received, including Plaintiffs.

26. At all times relevant to this action, Defendant Sam Borrelli, Jr. had the authority, and exercised the authority, to maintain employment records, determine rates of pay, assign work responsibilities, and otherwise control the terms and conditions of employment.

27. At all times relevant to the Complaint, Defendant Sam Borrelli, Jr. had the power to stop any illegal pay practices at North East Site Works, Inc.

28. At all times relevant to this action, Defendant Sam Borrelli, Jr. assigned work responsibilities and supervised and directed the work of employees.

29. Defendant Sam Borrelli, Jr. was present at the work sites on a regular basis.

30. At all times relevant to this action, Defendant Sam Borrelli, Jr. was Plaintiffs' "employer" within the meaning of the FLSA and the NYLL.

Virgil Borrelli

31. Defendant Virgil Borrelli is a principal, owner, and an officer of North East Site Works, Inc.

32. Defendant Virgil Borrelli has the authority to act on behalf of North East Site Works, Inc.

33. Upon information and belief, at all times relevant to this action, Virgil Borrelli had the authority to hire and fire employees, determine the work schedules of employees and determine the amount of wages that employees received, including Plaintiffs.

34. Upon information and belief, at all times relevant to this action, Defendant Virgil Borrelli had the authority to maintain employment records, determine rates of pay, assign work responsibilities, and otherwise control the terms and conditions of employment.

35. Upon information and belief, at all times relevant to the Complaint, Defendant Virgil Borrelli had the power to stop any illegal pay practices at North East Site Works, Inc.

36. Upon information and belief, at all times relevant to this action, Defendant Virgil Borrelli has the authority to assign work responsibilities and supervised and directed the work of employees.

37. Upon information and belief, at all times relevant to this action, Defendant Virgil Borrelli was Plaintiffs' "employer" within the meaning of the FLSA and the NYLL.

## FACTUAL ALLEGATIONS

38. Throughout their employment, Plaintiffs performed plumbing and construction work for Defendants. Their duties included excavating, breaking concrete, laying cement, laying tubing and pipes, connecting waterlines, paving driveways and sidewalks, small renovation projects, and other plumbing and construction tasks.

39. Plaintiffs worked on projects throughout Westchester.

40. Plaintiffs' duties were exclusively manual and non-clerical.

41. Plaintiffs spent all their working time engaged in physical tasks.

Plaintiff Lauro Valdes

42. From approximately summer 2017 through October 2021 and again from May 2, 2022 through July 5, 2022, Plaintiff Valdes worked Monday through Friday from approximately 7 a.m. to 3 p.m. or 5 p.m. and Saturday from 7 a.m. to 3 p.m., totaling approximately 49 to 59 hours per week.

43. During the winter months, approximately December through February, Plaintiff Valdes occasionally worked two or three days per week from 7 a.m. to 3 p.m., totaling approximately 16 to 24 hours per week.

44. Defendants told Plaintiff Valdes that he would be paid a weekly salary meant to cover a regular 40 hour workweek and any additional time he worked would be compensated accordingly. However, in reality, Defendants paid Plaintiff Valdes a flat weekly rate regardless of the number of hours he worked per workweek.

45. In or about 2017, Plaintiff Valdes was paid $900 per week.

46. In or about 2018, Plaintiff Valdes was paid $1,000 per week.

47. From approximately January 2019 through December 2020, Plaintiff Valdes was paid approximately $1,100 per week.

48. From approximately January 2021 through October 2021, Plaintiff Valdes was paid $1,200 per week.

49. From May 2, 2022 through July 5, 2022, Plaintiff Valdes was told he would be paid $1,300 per week.

50. On occasion, during his employment, Plaintiff Valdes received an additional $40 or $50 when he worked on Saturdays. However, for most Saturdays worked, Defendants did not

pay him any additional compensation. These additional payments were sporadic and at the whim of Defendants.

51. Plaintiff Valdes was normally paid in cash, but on several occasions was paid by check.

52. Plaintiff Valdes was never paid an overtime premium rate for hours worked more than forty hours in a workweek.

53. On various occasions throughout his employment, Defendants paid Plaintiff Valdes with checks that had insufficient funds. When Plaintiff Valdes raised the issue to Defendants, Defendant Sam Borrelli, Jr. would pay Plaintiff Valdes piecemeal in cash or failed to compensate him at all for the bounced check. Moreover, Defendants never reimbursed Plaintiff Valdes for the bank fees he incurred for these bounced checks.

54. For example, for the pay period beginning August 12, 2019, Defendants paid Plaintiff Valdes with a check with insufficient funds in the amount of $900. Defendants did not fully compensate Plaintiff Valdes for this pay period nor was he reimbursed for the bounced check bank fees he incurred.

55. In another instance, for the pay period beginning January 3, 2020, Defendants paid Plaintiff Valdes with a check with insufficient funds in the amount of $1,000. Defendants did not fully compensate Plaintiff Valdes for this pay period nor was he reimbursed for the bounced check bank fees he incurred.

56. Similarly, for paychecks dated May 28, 2021, June 15, 2021, and July 9, 2021, Defendants paid Plaintiff Valdes with a check with insufficient funds in the amount of $1,200 per check. Defendants did not fully compensate Plaintiff Valdes for this pay period nor was he reimbursed for the bounced check bank fees he incurred.

57. From May 2, 2022 through July 5, 2022, Defendants paid Plaintiff Valdes partial payment for his weeks of work. For example, for the week of May 16, 2022, Plaintiff Valdes worked 57 hours that week and Defendants only paid him $700. Plaintiff Valdes should have been paid $1,300 for his first 40 hours of work and $828.75 for his 17 overtime hours, totaling. Accordingly, Defendants owe Plaintiff $1,428.75 in wages for this workweek.

58. Although Defendants should have paid Plaintiff Valdes weekly as a manual laborer, Defendants often paid him late or in partial payments.

59. As a result, for this and other weeks Plaintiff Valdes was employed by Defendants, Plaintiff Valdes wages were paid late under NYLL § 191.

Plaintiff Cesar Lopez

60. From approximately February 2021 to February 18, 2022, Plaintiff Lopez regularly worked Monday through Friday from 7 a.m. to 3 p.m. or 4 p.m. and occasionally worked Saturdays from 7 a.m. to 3 p.m., totaling between 40 and 54 hours per week.

61. Plaintiff Lopez was told that he would be paid $170 per day in cash for an 8-hour workday, 5 days per week. Plaintiff Lopez was told that he would be paid additional compensation for any additional time worked.

62. Plaintiff Lopez was never paid an overtime premium for hours worked more than forty hours in a workweek.

63. During the last two months of his employment, Defendants only paid Plaintiff Lopez partially or, for some weeks, not at all.

64. For example, for the week of January 3, 2022, Plaintiff Lopez worked a total of 40 hours but was not paid at all. Defendants should have paid Plaintiff $850 for this workweek.

65. In another instance, for the week of January 10, 2022, Plaintiff Lopez worked a total of 46 hours and was paid $350. Defendants should have paid Plaintiff Lopez $850 for his first 40 hours of work and $191.25 for his 6 hours of overtime, totaling $1,041.25. Accordingly, Defendants owe Plaintiff Lopez $691.25 in wages for this workweek.

66. Similarly, for the work week of February 14, 2022, Plaintiff Lopez worked a total of 41 hours and was paid $300. Defendants should have paid Plaintiff Lopez $850 for his first 40 hours of work and $31.87 for his 1 hour of overtime, totaling $ 881.87. Accordingly, Defendants owe Plaintiff Lopez $581.87 in wages for this workweek.

Plaintiff Javier Hernandez

67. From approximately February 28, 2022 to May 27, 2022, Plaintiff Hernandez regularly worked Monday through Saturday from 7 a.m. to 4 p.m. to 5 p.m., with occasional 30-minute lunch breaks, totaling approximately 51 to 60 hours per week.

68. Plaintiff Hernandez was told that he would be paid a flat salary of $900 per week in cash., for an 8-hour workday, 5 days per week. Plaintiff Hernandez was told that he would be paid additional compensation for any additional time worked.

69. In reality, Plaintiff Hernandez only received partial payments between $400-$500 per week. When Plaintiff Hernandez complained to the foreman about his incomplete pay, he was occasionally paid up to an additional $200 piecemeal. Plaintiff Hernandez was told that he would be paid in full the following week but never received full payment.

70. Throughout his employment, Plaintiff Hernandez was never paid an overtime premium for hours worked more than forty hours in a workweek.

71. Moreover, Defendants did not Plaintiff Hernandez any wages at all for his last week of work. During the week of March 23, 2022, Plaintiff Hernandez worked 4 days from 7 a.m.

to 5 p.m., without a break, totaling 40 hours. Plaintiff Hernandez should have been paid $900 for his first forty hours of work. Accordingly, Defendants owe Plaintiff Hernandez $900 in wages for this workweek.

72. Defendants also failed to furnish to all three Plaintiffs, at the time they began working for Defendants, written notices of their wage rates or written disclosures of the other information required by NYLL § 195(1) in Plaintiffs' primary language.

73. Defendants never thereafter furnished to Plaintiffs with written notices or disclosures of the information required by NYLL § 195(1), including notices of any changes to Plaintiffs' rate of pay.

74. In addition, Defendants failed to furnish proper and accurate wage statements to all three Plaintiffs as required by NYLL § 195(3). Among other things, the wage statements failed to include Plaintiffs' hourly rates of pay, and did not include all hours worked by Plaintiffs.

## CAUSES OF ACTION

### FIRST CAUSE OF ACTION
**(FLSA -- Overtime Compensation Violations)**

75. Plaintiffs re-allege and incorporate by reference all allegations in all preceding paragraphs as if fully set forth herein.

76. At all times relevant to this action, Plaintiffs were employed by Defendants within the meaning of the FLSA, 29 U.S.C. § 203.

77. Defendants failed to pay Plaintiffs overtime wages at rates at least one-and-a-half times their regular rate of pay in violation of 29 U.S.C. § 207, throughout the entirety of Plaintiffs' employment.

78. Defendants' failure to pay Plaintiffs their lawful overtime wages was willful. Due to Defendants' FLSA violations, Plaintiffs are entitled to recover from Defendants their

unpaid overtime wages and an equal amount of liquidated damages, as well as attorneys' fees, costs of Court, and interest.

## SECOND CAUSE OF ACTION
### (NYLL – Overtime Compensation Violations)

79. Plaintiffs re-allege and incorporate by reference all allegations in all preceding paragraphs as if fully set forth herein.

80. At all times relevant to this action, Plaintiffs were employed by Defendants within the meaning of the NYLL, including but not limited to NYLL §§ 2 and 651.

81. At all times relevant to this action, Defendants failed to pay Plaintiffs overtime wages at rates at least one-and-a-half times the regular rate of pay for each hour worked in excess of forty hours per week, in violation of the NYLL and accompanying regulations.

82. Due to Defendants' NYLL violations, Plaintiffs are entitled to recover from Defendants their unpaid overtime wages, an equal amount as liquidated damages, as well as attorneys' fees, costs of Court, and interest.

## THIRD CAUSE OF ACTION
### On Behalf of Plaintiffs Valdes and Hernandez
### (NYLL – Late Payment of Wages in Violation of NYLL § 191)

83. Plaintiffs Valdez and Hernandez re-allege and incorporate by reference the foregoing allegations as if fully set forth herein.

84. Under NYLL § 191(a)(i) and supporting New York State Department of Labor Regulations, manual workers, such as Plaintiffs Valdes and Hernandez, must be paid weekly and not later than seven calendar days after the end of the week in which wages are earned.

85. Defendants willfully failed to pay Plaintiffs Valdes and Hernandez their wages weekly, in violation of New York Labor Law § 191(a). Instead, Defendants, at times, paid Plaintiffs Valdes and Hernandez their wages piecemeal.

86. As a result of Defendants' failure to pay Plaintiffs Valdes and Hernandez their wages weekly as required by NYLL § 191(a)(1), at least some of Plaintiffs Valdes' and Hernandez's wages were paid later than seven calendar days after the end of the week in which wages were earned.

87. Defendants' failure to pay the required wages as set forth above was willful within the meaning of New York Labor Law §§ 198, 663, and 681.

88. Due to Defendants' NYLL violations, Plaintiffs Valdes and Hernandez are entitled to recover from Defendants an equal amount of their late wages as liquidated damages, as well as attorneys' fees, costs of Court, and interest.

89. Due to Defendants' NYLL violations, Plaintiffs Valdes and Hernandez are entitled to recover from Defendants their unpaid overtime wages, an equal amount as liquidated damages, as well as attorneys' fees, costs of Court, and interest.

**FOURTH CAUSE OF ACTION**
**(NYLL – Failure to Pay Promised Wage for All Hours Worked)**

90. Plaintiffs reallege and incorporate by reference the foregoing allegations as if fully set forth therein.

91. Defendants willfully failed to pay Plaintiffs promised wages for all hours worked, in violation of New York Labor Law § 193.

92. Defendants' failure to pay the required wages as set forth above was willful within the meaning of New York Labor Law §§ 198, 663, 681.

93. Plaintiffs are therefore entitled to their unpaid wages as mandated by New York Labor Law, plus an additional 100 percent as liquidated damages, as a consequence of the Defendants' unlawful acts and omissions in accordance with New York Labor Law §§ 198, 663, 681.

94. Plaintiffs also seek, and is entitled to, attorneys' fees incurred by his counsel, costs of Court, and interest.

### FIFTH CAUSE OF ACTION
### (NYLL – Wage Notice and Wage Statement Violations)

95. Plaintiffs reallege and incorporate by reference the foregoing allegations as if fully set forth herein.

96. Defendants failed to provide Plaintiffs, at the time of their hiring or thereafter, wage notices in their primary language containing their rates of pay and other information as required by New York Labor Law § 195(1).

97. Defendants also failed to provide Plaintiffs with accurate wage statements with every payment of wages which provided all of the information required under New York Labor Law § 195(3).

98. For Defendants' violation of New York Labor Law § 195(1), Plaintiffs are entitled to $50 for each day of work in which this violation continued to occur, in an amount not to exceed $5,000, pursuant to New York Labor Law §198(1-b).

99. For Defendants' violation of New York Labor Law § 195(3), Plaintiffs are entitled to $250 for each day of work in which this violation continued to occur, in an amount not to exceed $5,000, pursuant to New York Labor Law §198(1-d).

100. Plaintiffs also seek and are entitled to, attorneys' fees incurred by their counsel, costs of Court, and interest.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs request that this Court enter an Order:

a. assuming jurisdiction over this action;

b. declaring Defendants violated the FLSA and New York Labor Law;

c. granting judgment to Plaintiffs on their FLSA claims and awarding Plaintiffs their unpaid wages and an equal amount in liquidated damages;

d. granting judgment to Plaintiffs on their New York Labor Law claims and awarding Plaintiffs their unpaid wages, applicable statutory damages, and liquidated damages as provided for by statute;

e. awarding Plaintiffs prejudgment and postjudgment interest as allowed by law;

f. awarding Plaintiffs their costs and reasonable attorneys' fees; and

g. granting such further relief as the Court deems just and proper.

DATED: Hawthorne, NY
February 15, 2023

**LAW OFFICE OF ROBERT D. MCCREANOR, P.L.L.C.**

*s/ Robert D. McCreanor*
Robert D. McCreanor
Law Office of Robert D. McCreanor, P.L.L.C.
245 Saw Mill River Rd. Suite 106
Hawthorne, NY 10532
(845) 202 1833
rmccreanor@rdmclegal.com

**WORKER JUSTICE CENTER OF NEW YORK**

Maureen Hussain
Cristina Brito
Worker Justice Center of New York
245 Saw Mill River Road, Suite 106

Hawthorne, NY 10532
(845) 331-6615
mhussain@wjcny.org
cbrito@wjcny.org

*Attorneys for Plaintiffs*